IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TEJAS MOTEL, L.L.C., <br> PLAINTIFFS, <br> <br> v. <br> <br> CITY OF MESQUITE, ACTING BY AND THROUGH ITS BOARD OF ADJUSTMENT, <br> DEFENDANTS. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | CIVIL ACTION NO. 3:20-CV-20-1982 <br> (JURY DEMAND) |

## ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

**COMES NOW** Plaintiff Tejas Motel, L.L.C. ("**Tejas**") and files its Original Complaint, respectfully showing as follows:

### I. Parties

1. Defendant City of Mesquite ("**City**") is a Texas home-rule municipality that can be served with process pursuant to Tex. Civ. Prac. & Rem. Code § 17.024(b) by serving its mayor, clerk, secretary, or treasurer.

2. To the extent it is claimed that the Board of Adjustment of the City is a body politic separate and independent of the City, which it is not, then the Board of Adjustment of the City (the "**BOA**") can be served with process pursuant to Tex. Civ. Prac. & Rem. Code § 17.024(b) by serving the City's mayor, clerk, secretary, or treasurer.

### II. Jurisdiction & Venue

3. This Court has jurisdiction over this action pursuant to: (1) 28 U.S.C. § 1983, by and through the Fifth Amended of the United States Constitution; and (2) 28 U.S.C. §§ 1331 and 1367.

1

4. Venue is appropriate in this district pursuant to 28 U.S.C. §1391 because: (1) at least one of the defendants resides in this judicial district; and/or (2) a substantial part of the events or omissions giving rise to these claims occurred in this judicial district.

### III.  Facts

5. Tejas owns the real property and improvements thereupon: (1) commonly known as 4405 East U.S. Highway 80, Mesquite, Dallas County, Texas; and (2) further described in that certain Deed of Trust recorded as Instrument No. 201800161402 in the records of the Dallas County Clerk (the "**Property**").  Tejas, or its owner R.V. Patel or predecessor, has continuously operated the "Tejas Motel" from the Property since approximately 1970.

6. As a lodging facility offering accommodation to the general public, the "Tejas Motel" is and at all relevant times has been, upon information and belief, a "public service business" within the meaning of Tex. Loc. Gov't Code § 211.013(b).  As such, the City is not authorized to require the removal or destruction of the Property under color of "zoning" ordinances.

7. On September 4, 1973, the City enacted Ordinance No. 1135, its Comprehensive Zoning Ordinance.  Article 43 established a "C-District" that was intended to accommodate a wide variety of commercial uses and have general application as a highway service district. Section 43.004 specifically authorized the use of property in a "C-District" as a hotel, motel, or motor hotel. The Property was situated within a "C-District".  Thus, the operation of the "Tejas Motel" continued as a conforming, permitted use of the Property as of the enactment of the Comprehensive Zoning Ordinance.  The City made no factual findings relevant to lodging facilities in enacting this ordinance.

8. The Comprehensive Zoning Ordinance was recodified on November 21, 1988, and has been amended over 100 times since.

9. On April 2, 1990, the City enacted Ordinance No. 2667, which amended the Mesquite Zoning Ordinance by, among other things, adding a new section 5-402 to the Code of the City of Mesquite, Texas (the "**City Code**") titled "Board of Adjustment" that created the City of Mesquite Board of Adjustment (the "**Board**") to, among other things, "hear and decide upon other matters which may be delegated to the Board by this or any other ordinance of the City." The City describes the Board as a "quasi-judicial body". The City made no factual findings relevant to lodging facilities in enacting this ordinance.

10. The Board is governed by those certain City of Mesquite Board of Adjustment By-Laws and Rules of Procedure (the "**By-Laws**"). Article V of the By-Laws is titled "HEARING PROCEDURES" and provides guidance for how hearings are generally to be conducted. Article VII of the By-Laws is titled "PROCEDURES FOR STAGE TWO OF A COMPLIANCE HEARING". Under this article, the parties (here, Tejas and the City) are required: (1) at least 10 business days before the hearing to exchange witness lists and exhibits, and to confer to determine stipulations to facts and admissibility of exhibits; and (2) three business days after the exchange of witness lists and exhibits to supplement such witness list and exhibits. Under this article, the parties are required at least six business days before the hearing to filed with the BOA Secretary a position statement.

11. On April 2, 1990, the City enacted Ordinance No. 2668, which amended the Mesquite Zoning Ordinance by, among other things, adding a new section 1-300 titled "Nonconforming Situations". Under this ordinance, a "situation shall be classified as nonconforming and shall be a legal use under these provisions when such situation was in

existence and lawfully operating at the time of adoption of the zoning provisions or amendments thereto which created the nonconforming situation[.]" The City made no factual findings relevant to lodging facilities in enacting this ordinance.

12. On February 3, 1997, the City enacted Ordinance No. 3137, which amended the Mesquite Zoning Ordinance by, among other things, creating two categories of lodging facilities – a "General Service Hotel/Motel" and a "Limited Service Hotel/Motel"[1] – and determining that a "Limited Service Hotel/Motel" was no longer a conforming use anywhere in the city limits, including in a "C-District". This ordinance defined a "Limited Service Hotel/Motel" to be any facility that did not meet the design specifications of a "General Service Hotel/Motel," which require: (1) internal hallways for primary room access; (2) a meeting room of at least 450 square feet; (3) a recreational facility; and (4) a restaurant located either on-site or on an adjoining site. The City made no factual findings in enacting this ordinance.

13. With the enactment of Ordinance No. 3137, every existing lodging facility in Mesquite instantly became a nonconforming use because no lodging facility featured the attributes required to be a "General Service Hotel/Motel".[2] Ordinance No. 3137 did not advance any public interest, much less a compelling one; does not advance consistent zoning; was not sufficiently related and/or did not bear a substantial relationship to a legitimate government interest (promoting aesthetics or advancing economic redevelopment are not a legitimate government interests); and/or was so unreasonably burdensome that it is oppressive in relation to

---

[1] It does not appear that Tex. Loc. Gov't Code Chapter 211 even authorizes the City to enact a "zoning" ordinance such Ordinance Nos. 3137 because the ordinance does not meet one of the enumerated reasons set forth in Tex. Loc. Gov't Code § 211.003. Moreover, zoning ordinances are properly directed to the use of a property such as for a lodging facility as opposed to micromanaging the characteristics the lodging facility must possess (e.g., 449 v. 450 square feet of meeting room).

[2] Still today, every lodging facility in Mesquite continues to be a nonconforming use except for those few facilities fortunate enough to be granted a conditional use permit awarded in the discretion of the City.

4

any alleged underlying governmental or public interest. For example, there is no evidence that a lodging facility with a meeting room of 449 square feet was materially different from one with a meeting room of 450 square feet. Notwithstanding, one is a nonconforming use subject to amortization, while the other is a permitted, conforming use. Yet, neither use appears harmful in any respect to public health, safety, morals, or welfare (and the City cannot articulate any reasoned basis for this distinction), and any benefit to the City from such arbitrary zoning distinctions was not material and could not justify the burden on individual rights. The amendment to the ordinance resulted in an unconstitutional ex post facto, retroactive law, as applied to Tejas and similarly situated property owners.

14. By at least as early as the 2000s, the City began a campaign to demand that Tejas renovate the Property at a substantial cost to Tejas. The City demanded Tejas invest substantial sums in the Property while knowing that the Property had become a nonconforming use back in 1997 as a result of the enactment of Ordinance No. 3137. As demanded by the City, Tejas invested substantial sums in the Property.

15. On June 16, 2008, the City enacted Ordinance No. 3963,[3] which amended the Mesquite Zoning Ordinance by, among other things, by changing the definition of a "General Service Hotel/Motel" to require: (1) a minimum of 150 guest rooms; (2) internal hallways for primary room access that are accessible from a central lobby; (3) a meeting room of at least 4,000 square feet; (4) a separate business center equipped with at least two computers with Internet access, two printers, and a facsimile machine; (5) a recreational facility consisting of an indoor or outdoor swimming pool (with a minimum surface area of 800 square feet), indoor fitness center (key-restricted to guests of the hotel and supplied with cardio equipment, free or

---

[3] *Supra* fn. 1.

static weights, video screens, a drinking fountain, and towel service), or both, together with separate dressing rooms for men and women; and (6) a restaurant located either within the hotel or attached by an enclosed hallway, with seating for a minimum of 50 customers, offer menu service with wait staff for two of three meal periods, and offer hotel guests the option to charge meals to their hotel accounts.  The City made no factual findings relevant to lodging facilities in enacting this ordinance.

16. Ordinance No. 3963 did not advance any public interest, much less a compelling one; does not advance consistent zoning; is not sufficiently related and/or does not bear a substantial relationship to a legitimate government interest; and/or is so unreasonably burdensome that it is oppressive in relation to any alleged underlying governmental or public interest.  For example, there is no evidence that a lodging facility with a meeting room of 3,999 square feet is materially different from one with a meeting room of 4,000 square feet.[4]  Notwithstanding, one is a nonconforming use subject to amortization, while the other is a permitted, conforming use.  Yet, neither use appears harmful in any respect to public health, safety, morals, or welfare (and the City cannot articulate any reasoned basis for this distinction), and any benefit to the City from such arbitrary zoning distinctions is not material and cannot justify the burden on individual rights.  The amendment to the ordinance resulted in an unconstitutional ex post facto, retroactive law, as applied to Tejas and similarly situated property owners.

17. On April 16, 2018, the City enacted Ordinance No. 4553, which amended the Mesquite Zoning Ordinance by dramatically changing Section 1-304(C) of the Mesquite Zoning Ordinance.  The City made no factual findings in enacting this ordinance.

---

[4] Likewise, the distinction between a lodging facility with 149 rooms versus 150 rooms, or one printer versus two printers, or one with no video screens in a fitness center versus one with video screens, is arbitrary.

18. Prior to this amendment, this section read:

Amortization.  The board [of adjustment], in accordance with its procedures, may require the total discontinuance of a nonconforming situation **under any plan whereby the full value of the structures can be amortized within a definite period of time**, taking into consideration the general character of the neighborhood, the necessity for all property to conform to the regulations of this ordinance, and having due regard for the property rights of the persons affected when considered in light of the public welfare and the conservation and preservation of property. The board may from time to time, upon its own motion or upon cause presented by others, inquire into the existence and continuation of any nonconforming situation and may call hearings to consider the amortization of such situations.

(Emphasis added).

19. After this amendment, this section read:

Amortization.

1. Compliance regulations for nonconforming uses. It is the declared purpose of this subsection that nonconforming uses be eliminated and be required to comply with the regulations of the Mesquite Zoning Code, having due regard for the property rights of the persons affected, the public welfare and the character of the surrounding area.

    a. Amortization of nonconforming uses.

        i. Request to establish compliance date. The City Council may request that the Board of Adjustment ("Board") consider establishing a compliance date for a nonconforming use. In addition, any person who resides or owns real property in the City may request that the Board consider establishing a compliance date for a nonconforming use. Upon receiving such a request, the Board shall hold a public hearing to determine whether continued operation of the nonconforming use will have an adverse effect on nearby properties. If, based on the evidence presented at the public hearing, the Board determines that continued operation of the use will have an adverse effect on nearby properties, it shall proceed to establish a compliance date for the nonconforming use; otherwise, it shall not.

7

    ii.    Factors to be considered. The Board shall consider the following factors when determining whether continued operation of the nonconforming use will have an adverse effect on nearby properties:

        1.    The character of the surrounding neighborhood.
        2.    The degree of incompatibility of the use with the zoning district in which it is located.
        3.    The manner in which the use is being conducted.
        4.    The hours of operation of the use.
        5.    The extent to which continued operation of the use may threaten public health or safety.
        6.    The environmental impacts of the use's operation, including but not limited to the impacts of noise, glare, dust and odor.
        7.    The extent to which public disturbances may be created or perpetuated by continued operation of the use.
        8.    The extent to which traffic or parking problems may be created or perpetuated by continued operation of the use.
        9.    Any other factors relevant to the issue of whether continued operation of the use will adversely affect nearby properties.

    iii.    Finality of decision. **<u>A decision by the Board to grant a request to establish a compliance date is not a final decision and cannot be immediately appealed</u>**. A decision by the Board to deny a request to establish a compliance date is final unless appealed to state court within ten (10) days in accordance with Chapter 211 of the Local Government Code.

    iv.    Determination of amortization period.

        1.    If the Board determines that continued operation of the nonconforming use will have an adverse effect on nearby properties, it shall, in accordance with the law, provide a compliance date for the nonconforming use **<u>under a plan whereby the owner's actual investment in the use before the time that the use became nonconforming can be amortized within a definite time period</u>**.

        2.    The following factors must be considered by the Board in determining a reasonable amortization period:

            a. The owner's capital investment in structures, fixed equipment and other assets (excluding inventory and other assets that may be feasibly transferred to another site) on the property before the time the use became nonconforming.

      b. Any costs that are directly attributable to the establishment of a compliance date, including demolition expenses, relocation expenses, termination of leases and discharge of mortgages.
      c. Any return on investment since inception of the use, including net income and depreciation.
      d. The anticipated annual recovery of investment, including net income and depreciation.

    v. Compliance requirement. If the Board establishes a compliance date for a nonconforming use, the use must cease operations on that date and it may not operate thereafter unless it becomes a conforming use.

    vi. Definition of owner. For purposes of this Section 1-304(C), **"owner" means the owner of the nonconforming use at the time of the Board's determination of a compliance date for the nonconforming use**.

(Emphasis added).

  20. To summarize the change in determining the amortization period resulting from the amendment: (1) prior to the amendment, the existing owner of the amortized property would be given a period of time to continue operations so that the existing owner could recover the full value of the structures on the property as of the date the amortization was ordered; and (2) after the amendment, the existing owner of the amortized property would be given a period of time to continue operations only if the existing owner owned the amortized property at the time the use became non-conforming, and even then only for a period of time to recover the owner's actual investment before the use became non-conforming. The amendment also added multiple new defined (and unlimited undefined) factors to consider when determining whether to amortize a property in the first place.

  21. Upon information and belief, the City enacted Ordinance No. 4553 specifically to discriminate against certain lodging facilities, including the "Tejas Motel", that the City desired to shut down in violation of the United States and Texas constitutions. Upon information and

belief, the City enacted Ordinance No. 4553 as a pretext to target certain properties, including the Property, for economic redevelopment in violation the United States and Texas constitutions, Tex. Gov't Code Chapter 2206, and Tex. Prop. Code Chapter 21.  Upon information and belief, the City enacted Ordinance No. 4553 to shut down properties where the City could not meet the requirements of Tex. Loc. Gov't Code 54 or Tex. Civ. Prac. & Rem. Code Chapter 125.  The amendment to the ordinance resulted in an unconstitutional ex post facto, retroactive law, as applied to Tejas and similarly situated property owners.

22. Even before this time, the City instructed its code compliance officers to conduct super-aggressive, highly technical reviews of lodging facilities, including the "Tejas Motel", to support the City's plan to shut down these lodging facilities for code violations.  The code compliance officers accepted this assignment and began writing up properties for trivial or non-existent violations, including "violations" that were not founded in the code compliance ordinances.

23. Soon after the enactment of Ordinance No. 4553, the City sprung its plan into action.  On or about June 4, 2018, the City passed a resolution instructing the Board to consider establishing a compliance date for five lodging facilities, including the "Tejas Motel", that were alleged to be nonconforming hotel/motel uses, even though no lodging facility in the city limits qualified as a "General Service Hotel/Motel".  The recitals indicated citizens had expressed concern regarding the condition and operation of these lodging facilities.  Therein, the City acknowledged the procedure of Ordinance No. 4553 required a two-step process: (1) first, determine whether the continued operation of the nonconforming use will have an adverse effect on nearby properties; and (2) if so, second, determine a compliance date for the nonconforming

use. This resolution instructed the Board first to evaluate whether the Property should be amortized.

24. By letter dated July 17, 2018, the City issued generic notice addressed "To Whom It May Concern" that the Property is zoned Commercial and is located in the Skyline Logistics Hub Overlay. The second contention appears to be false as the Property is not within the boundaries of the Skyline Logistics Hub Overlay. The City acknowledged the "Tejas Motel" had been operating on the Property since 1970, which was before the City enacted Ordinance No. 1135, its Comprehensive Zoning Ordinance. The City concluded by asserting the "Tejas Motel" "is a nonconforming use and subject to Section 1-300 of the Mesquite Zoning Ordinance."

25. The City then dispatched a letter notifying Tejas that the Board would consider the Property for amortization at a hearing to be held on July 26, 2018.

26. Prior to the hearing, the City, through its Assistant City Attorney, asserted that Tejas was not entitled to any amortization period at all following this amendment because Tejas did not own the Property in 1997 when the use as the "Tejas Motel" became non-conforming, even though Tejas' principal did own the Property as of that date. Even if Tejas were allowed any period of amortization, then the City argued Tejas was only entitled to an amortization period sufficient to allow Tejas to recover its investment as of 1997, despite the fact that the City had demanded Tejas invest substantial sums to renovate the Property. Either interpretation advanced by the City results in a taking in violation of the United States and Texas constitutions and statutes.

27. Prior to the hearing, the City provided Tejas with its proposed evidentiary exhibits. Included among these exhibits was a Powerpoint presentation titled "I-30 & US-80 Targeted Economic Development Opportunities, Mesquite, Texas." The City's inclusion of this Exhibit C corroborates the City's intent that Ordinance No. 4553 was enacted as a pretext to target certain properties, including the Property, for economic redevelopment in violation the United States and Texas constitutions, Tex. Gov't Code Chapter 2206, and Tex. Prop. Code Chapter 21.

28. Prior to the hearing, the City alleges to have publicly posted an agenda in the manner required by Texas Open Meetings Act, Tex. Gov't Code Chapter 551.

29. The Board called the meeting to order on July 26, 2018. After dealing with other unrelated agenda items, the Board called the amortization of the "Tejas Motel" to hearing. In announcing the agenda item, the Board noted the amortization hearing is a two-stage process. At the hearing being held that day on July 26, 2018, the Board was to determine whether the continued operation of the "Tejas Motel" would have an adverse effect on nearby properties, which is the predicate inquiry of the amortization process. If the answer to that inquiry was "no," then no further action would be taken by the Board. If, however, the Board determined otherwise, then the case would be continued to a subsequent hearing date to determine a reasonable amortization period for the Property.

30. Based upon the City's claims that Tejas would be given no amortization period (as would be the case under the express terms of Ordinance No. 4553), and concerned that Tejas could not receive a fair, impartial hearing before the Board, whose members are appointed by the City Council that had passed the resolution instructing the Board to conduct the amortization hearing (and certain of whom subsequently made public statements that at a minimum create an

appearance of bias and lack of impartiality), and based upon the representation of the City's attorney that Tejas could always later apply for a conditional use permit to continue operating despite any amortization decision, Tejas cut a deal with the City as a result of this unlawful duress. Under those circumstances, Tejas agreed to amortization as well as to an amortization period through May of 2019. The City then moved to admit its documentary evidence, including Exhibit C, which the Board accepted into evidence. The Board then voted to approve the amortization.

31.   Because Tejas had agreed under duress to the amortization, the City and Board decided they could immediately continue to the second stage of the amortization process, which was to establish an amortization date. The decision of the City and Board in this respect violated the Texas Open Meetings Act because there was not proper notice that the Board would conflate the two-stage process into a single hearing. Indeed, this decision was contrary to the Board's announcement at the start of the hearing that the July 26th hearing would only determine whether the Property was subject to amortization, and that a second hearing would be held at a subsequent date to determine the amortization period. In addition, this decision was in violation of the By-Laws. The agreement between the City and Tejas did and could not cure this violation of the Texas Open Meetings Act.

32.   The City claims the "Decision and Order of the Board of Adjustment in Case No. BOA0718-0079" was filed in the Board's office on July 31, 2018. However, Section 5-402 of the City Code requires the Board to keep minutes of its proceedings that reflect the official actions of the Board, which are to be filed in the Board's office. Section 5-402 also requires that a decision of the Board is to be filed in the Board's office on the business day following the date the Board renders a final decision in open meeting. Tex. Loc. Gov't Code § 211.008(f) requires

the minutes and records be filed immediately. Considering the decision was allegedly rendered on Thursday, July 26th, the Board was required under its governing ordinance to file its decision by Friday, July 27, 2018. The City claims the Board violated this requirement by filing the decision many days late.

33. Regardless, the document that matters for compliance with this requirement is the Board's signed meeting minutes that reflect its official actions during a meeting, as indicated in Section 5-402 of the City Code as well as Article VIII of the By-Laws. As of the date of original filing of this suit, the Board's meeting minutes for the July 26, 2018, appear not to have been signed or filed, at least according to the City's website.

34. On November 14, 2018, Tejas submitted an application for a conditional use permit to allow the continued operation of the Tejas Motel notwithstanding the alleged non-conforming, legal use status of the property. On December 10, 2018, the City of Mesquite Planning and Zoning Commission denied Tejas' application. On January 7, 2019, the City of Mesquite City Council denied the application. Therefore, Tejas exhausted all of its remedies and is thus entitled to assert all causes of action.

### IV. Causes of Action

35. All conditions precedent to Tejas' recovery have occurred or have been waived, excused, or otherwise satisfied. All notices required have been provided, waived, excused, or otherwise satisfied.

36. Tejas repeats and incorporates the allegations contained in paragraphs 1-35 herein for all purposes, including in support of each cause of action asserted. Tejas asserts all causes of action available under these allegations, whether identified by specific title or not, including pursuant to Tex. Civ. Prac. & Rem. Code Chapter 37.

### A. Constitutional Taking & Violations

37. Ordinance Nos. 3137 and 3963 do not appear to be a permissible use of zoning authority under Tex. Loc. Gov't Code § 211.003. The City's enforcement of Ordinance Nos. 3137, 3963, and 4553 (and any other ordinances that otherwise amended the City Code similarly) against Tejas does not substantially advance and is not rationally related to legitimate state interests; has a severe economic impact upon Tejas; interferes with Tejas' distinct investment-backed expectations; is arbitrary; as applied, reflects a discriminatory intent to single out certain properties of a general class; results in a compensable taking under the United States constitutions and statutes; and are unconstitutional *ex post facto* laws that significantly impact a substantial interest of Tejas. Tejas seeks judgment declaring the legality and constitutionality of these ordinances as well as judgment against the City for just and adequate compensation for the Property. Tejas also seeks recovery of costs of litigation and reasonable attorney fees.

### B. Declaratory Judgment

38. Ordinance Nos. 3137 and 3963 do not appear to be a permissible use of zoning authority under Tex. Loc. Gov't Code § 211.003. Ordinance Nos. 2668 and 4553 authorize the City to amortize property, but the legality and constitutionality of amortization is currently under review by the Texas Supreme Court.[5] Tejas has a constitutional right and economic-liberty interest to work and earn a living and to use the Property as desired, especially if the use is one that pre-dated any governmental restriction. Tejas seeks a declaratory judgment construing and/or invalidating various City ordinances: (1) whether Ordinance No. 2668 is valid and can be enforced against Tejas and/or the Property; (2) whether Ordinance No. 3137 is valid and can be

---

[5] There is a split in the United States courts of appeal as to whether the concept of amortization violates the United States Constitution. Tejas agrees that amortization violates the United States Constitution.

enforced against Tejas and/or the Property; (3) whether Ordinance No. 3963 is valid and can be enforced against Tejas and/or the Property; (4) whether Ordinance No. 4553 is valid and can be enforced against Tejas and/or the Property; and (5) the City is not authorized under Tex. Loc. Gov't Code Chapter 211 to promulgate "zoning" ordinances in the form of Ordinance Nos. 3137 and 3963.

39.     Tejas seeks a declaratory judgment that Ordinance Nos. 2668, 3137, 3963, and 4553 are void because the City exceeded its constitutional and statutory in enacting such ordinances. These ordinances, on their face and as applied to Tejas, are void and unlawful because they: (1) violate Tex. Gov't Code Chapter 2206; (2) violate Tex. Prop. Code Chapter 21; (3) violate the organic ordinance vesting the Board with authority as well as Tex. Loc. Gov't Code Chapter 211; (4) violate the equal protection clauses of the United States and Texas constitutions because the City is treating Tejas differently than every other lodging facility in the City, none of which qualify as a "General Service Hotel/Motel", which means the City could amortize every lodging facility, and which means the City must apply the amortization process to all lodging facilities rather than singling out Tejas for amortization; therefore, Tejas is being treated differently from those whose situation is directly comparable in all material respects to Tejas, which violates Tejas' constitutional rights; (5) violate the *ex post facto* and retroactive clauses of the United States constitution because they significantly impact a substantial interest of Tejas, after taking into consideration the nature and strength of the public interest served by the law as evidenced by the City's lack of factual findings, the nature of the prior right impaired, and the extent of the impairment; (6) violate the due course and due process clauses of the United States constitution, including because the purposes of these ordinances are not rationally related to a legitimate governmental interest, or when considered as a whole, the actual real-

world effect of the ordinances as applied to Tejas is not rationally related to, or is so burdensome as to be oppressive in light of, the governmental interest; (7) violate the takings clauses of the United States constitution because the City cannot condemn the Property for the purpose sought or because the City must pay just or adequate compensation; (8) constitute an *ultra vires* act; (9) for being unlawful "spot" zoning; and (10) because one or more members of the Board – a quasi-judicial body – were biased and lacked impartiality, as corroborated by Odom's decision after the hearing at issue to recuse himself from amortization hearings that were subsequently held.

## V. Demand for Jury

40. Tejas demands a trial by jury.

## VI. Prayer

**WHEREFORE**, **PREMISES CONSIDERED**, Plaintiff prays the Court enter judgment in its favor for all relief requested herein or that are available under these facts and award Plaintiff all such other and further relief, both general and special, at law or in equity, to which they may be entitled.

    Respectfully submitted,

    **PATEL GAINES, PLLC**
    221 West Exchange Ave., Suite 206A
    Fort Worth, Texas 76164
    www.patelgaines.com
    (817) 394-4844 | Telephone
    (817) 394-4344 | Facsimile

    By: */s/ Lance H. "Luke" Beshara*
        Lance "Luke" H. Beshara
        Texas State Bar No. 24045492
        lbeshara@patelgaines.com

    **ATTORNEYS FOR TEJAS**